UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ANSANTA COLE | CIVIL ACTION |
| VERSUS | NO. 22-1540 |
| ST. JOSEPH OF HARAHAN, LLC, ET AL. | SECTION "R" (3) |

## ORDER AND REASONS

Before the Court is plaintiff Ansanta Cole's[1] motion to remand.[2] Defendants St. Joseph of Harahan, LLC, Highpoint Healthcare, LLC, and Plantation Management Company, LLC, oppose the motion.[3] For the following reasons, the Court grants plaintiff's motion, and remands this case to state court.

I.   **BACKGROUND**

This case arises from the alleged understaffing and underfunding of St. Joseph of Harahan, LLC, a skilled care nursing facility (the "facility"). Cole, as a representative of her father, who was a resident at St. Joseph of Harahan,

---

[1] Cole filed this case as a representative of her father, Osborne Picou, Jr., and on behalf of all others similarly situated. R. Doc. 1-1 ¶ 17.
[2] R. Doc. 6.
[3] R. Doc. 12.

filed suit in Louisiana state court against the owners, operators, and managers of the facility, alleging violations of Louisiana Civil Code article 2315, and the Louisiana Nursing Home Residents' Bill of Rights, La. R.S. § 40:2010.8.[4] In her petition, Cole asserts that defendants failed to "adequately fund and staff their facility so as to meet and provide for, respect and adhere[] to the rights set forth in the Louisiana Residents' Bill of Rights," and associated Louisiana state regulations, La. Admin. Code tit. 48, Pt. I, § 9823(A).[5] Cole also asserts that defendants made "intentional/fraudulent misrepresentations" to residents that the facility would comply with the Louisiana Residents' Bill of Rights, and that the residents, including Mr. Picou, and others similarly situated, justifiably relied on those affirmative representations.[6] The petition also cites to federal regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS") that require skilled nursing facilities to adequately fund and staff their facilities in order to receive federal funds.[7]

In paragraph 15 of the petition, plaintiff lays out her "methodology" for determining defendants' violations of state law.[8] She contends that based on

---

[4] R. Doc. 1-1 ¶ 5.
[5] *Id.* ¶¶ 7, 9.
[6] *Id.* ¶¶ 8, 13.
[7] *Id.* ¶¶ 10-11.
[8] *Id.* ¶ 15.

reports filed by the defendants to CMS, the facility had 147,039 "Nursing Hours" for the year, which results in an average "per patient day" ("PPD") ratio of nursing hours to residents of 3.00.[9] Plaintiff then calculated the "collective resident acuity and care needs" based on data from "(1) facility assessments of the staffing resources needed to provide care; (2) data from aggregated Minimum Data Set ("MDS" resident assessments); (3) Resource Utilization Group ("RUG") scores; (4) Centers for Medicare & Medicaid Services ("CMS") Form 672 summary of resident needs and costs reports; (5) resident ADL summaries; and (6) the new Patient-Driven Payment Model ("PDPM") scores."[10] Based on this data, Cole asserts that the facility was required to provide a PPD ratio of nurses to residents of at least 4.46.[11] Accordingly, she concludes that there was "a negative 33% variance between" nurses actually provided by the facility, and the staffing that what was required by the facility's residents.[12]

Based on the above calculations, plaintiff represents that as a result of the defendants' fraudulent misrepresentations that it would comply with the Louisiana Residents' Bill of Rights, and the justifiable reliance on those

---

[9]   *Id.* ¶ 16.
[10]  *Id.* ¶ 15.
[11]  *Id.* ¶ 16.
[12]  *Id.*

3

misrepresentations by residents, the facility deprived residents of 33 percent of the nursing services promised, and therefore class members are entitled to recover pecuniary damages totaling "33% of the amount of . . . money paid to the [defendants] in the class period for resident care."[13]  Plaintiff additionally seeks a statutory penalty of $100 per day, general and special damages, attorneys' fees, and injunctive relief under the Louisiana Residents' Bill of Rights.[14]

On May 27, 2022, defendants removed the case to this Court on the basis of federal-question jurisdiction and supplemental jurisdiction.[15]  In their notice of removal, defendants assert that federal-question jurisdiction is proper because plaintiff "alleges violations of federal law, in particular, 42 C.F.R. § 483.1, *et. seq.*"[16]  Plaintiff then moved to remand, arguing that her claims sound solely in state law.[17]  The Court considers the parties' arguments below.

---

[13]   *Id.* ¶ 13.
[14]   *Id.* ¶¶ 31-38.
[15]   R. Doc. 1 ¶ 6.
[16]   *Id.* ¶ 7.
[17]   R. Doc. 6.

## II.    LEGAL STANDARD

A defendant may remove a civil action filed in state court if a federal court would have original jurisdiction over the suit.  28 U.S.C. § 1441(a).  The removing party bears the burden of showing that federal jurisdiction exists. *See Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995) ("[I]t is well settled that the removing party bears the burden of establishing the facts necessary to show that federal jurisdiction exists." (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253-54 (5th Cir. 1961))). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

Federal courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331. Whether a claim arises federal law must be determined by referring to the "well-pleaded complaint." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 8808 (1986) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9-10 (1983)); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  This means that the federal question must appear on the face of the complaint. *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997).  Because defendants may remove a case to federal court only if the

plaintiffs could have brought the action in federal court at the outset, "the question for removal jurisdiction must also be determined by reference to the 'well-pleaded complaint.'" *Merrell Dow*, 478 U.S. at 808 (citation omitted).

## III. DISCUSSION

### A. Federal-Question Jurisdiction Under *Grable*

Because it is uncontested that plaintiff does not assert any federally created causes of action,[18] federal-question jurisdiction exists only if an exception to the well-pleaded complaint rule applies. Relying on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), defendants argue that removal was proper because plaintiff's claims are "substantially based on federal law."[19] They base this conclusion on the argument that "federal law provides the applicable standard or duty and Plaintiff seeks an injunction to enforce the requirements of federal

---

[18] R. Doc. 6-1 at 9 ("[P]laintiff's Petition does not present any federally created causes of action."); R. Doc. 12 at 13 (noting that defendants do not contest that it is a "settled proposition that the federal regulations at issue do not provide a private right or cause of action"); *see also Stewart v. Berstein*, 769 F.2d 1088, 1089 (5th Cir. 1985) (holding that Medicaid regulations do not create a private cause of action).

[19] R. Doc. 12 at 5.

6

law."[20] In *Grable*, the Internal Revenue Service ("IRS") had seized plaintiff's property to satisfy a tax delinquency and sold it to defendant. *Id.* at 310. Plaintiff filed a quiet title action in Michigan state court alleging that the defendant's title to the property was invalid, and defendant removed. *Id.* A Michigan court rule required the plaintiff to specify the facts establishing the superiority of its claims, and plaintiff "premised its superior title claim on a failure by the IRS to give [plaintiff] adequate notice [of the sale to defendant], as defined by federal law." *Id.* at 314. The Supreme Court found that whether the plaintiff "was given notice within the meaning of the federal statute" was "an essential element of its quiet title claim, and the meaning of the federal statute [was] actually in dispute." *Id.* In finding federal-question jurisdiction, the Court observed that the meaning of the federal tax provision was an important issue of federal law that belonged in federal court. *Id.* This was especially true in light of the Government's interest in the "prompt and certain collection of delinquent taxes," and the "IRS's need for certainty in notice requirements to provide buyers of seized property assurance that the IRS has taken all steps required to convey good title." *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 709 (1983)).

---

[20] *Id.*

7

Following its decision in *Grable*, the Supreme Court has stated that only a "slim category" of cases will satisfy the *Grable* paradigm. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). This is because the mere presence of a federal issue "does not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813; *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 115 (1936) ("Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit."). Under *Grable*, federal-question jurisdiction exists only when (1) resolving a federal issue is necessary to the resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (citing *Grable*, 545 U.S. at 314).

The Court finds that defendants have not met *Grable*'s requirements to establish jurisdiction based on a substantial federal question. Plaintiff's complaint explicitly seeks relief exclusively under state law provisions, including the Louisiana Nursing Home Residents' Bill of Rights, Louisiana tort law, and the Louisiana Department of Health and Hospital ("DHH") regulations. Specifically, plaintiff requests relief under the Louisiana Nursing Home Residents' Bill of Rights, which guarantees residents the

8

"right to receive adequate and appropriate health care and protective and support services, including services consistent with the resident care plan, with established and recognized practice standards within the community, and with rules promulgated by the Department of Health and Hospitals." La. R.S. § 40:2010.8(A)(7). In turn, the DHH regulations relied on by plaintiff require nursing facilities to "provide a sufficient number of nursing service personnel consisting of registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides to provide nursing care to all residents in accordance with resident care plans 24 hours per day." La. Admin. Code tit. 48, pt. I, § 9823(A). The DHH regulations also require nursing facilities to provide "2.35 hours of care per patient per day . . . [a]t a *minimum*." La. Admin. Code tit. 48, pt. I, § 9823(A)(1) (emphasis added).

Although plaintiff explicitly seeks state law relief, defendants assert that the Court will be forced to resolve an important and disputed federal issue for two reasons. First, defendants argue that plaintiff's reference to a federal regulation, 42 C.F.R. § 483.35, is an "explicit allegation[] about federal law," and that plaintiff "notably [is] accusing the Defendants of . . . violating federal law."[21] But this argument misreads plaintiff's complaint, which states that "[t]his action is brought pursuant to Louisiana Civil Code

---

[21] R. Doc. 12 at 13-14.

9

article 2315 and the Louisiana Residents' Bill of Rights found in La. R.S. 40:2010.8."[22]  Plaintiff's reference to a federal regulation is not the same thing as bringing a cause of action and seeking relief under that regulation.  *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917-18 (5th Cir. 2001) (stating that plaintiff's "mention of federal law merely served to describe [the] types of conduct that violated the [state law], not to allege a separate cause of action under the [federal law]").

At most, plaintiff's citation to the federal regulation is as evidence of a state law violation.  Under well-established precedent, a plaintiff's citation to a federal regulation "merely as further evidence of the right to recover under state law" is insufficient to establish federal-question jurisdiction.  *See Till v. Unifirst Fed. Savings & Loan Ass'n*, 653 F.2d 152, 155 n.2 (5th Cir. 1981); *see also Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1379 (5th Cir. 1980) (holding that when "the only relationship the alleged violation of the [federal regulation] had to th[e] case was simply as evidence of [defendant's] negligence," this was insufficient to establish federal-question jurisdiction).  More specifically, courts have found that a plaintiff's citation to 42 C.F.R. § 483.1, *et seq.*, as part of a state negligence claim is insufficient to establish jurisdiction under 28 U.S.C. § 1331.  *See Johnson v. Ara Grp., Inc.*, No. 94-

---

[22]   R. Doc. 1-1 ¶ 5.

2673, 1994 WL 903005, at *2 (S.D. Tex. Nov. 2, 1994) (noting that a complaint that "refers to the violation of federal regulations codified at 42 C.F.R. §§ 483.1[,] *et seq.*[,] as evidence that the defendants violated their state law standard of conduct" does not raise a federal question); *Campbell ex rel. Robinson v. Cottage Grove Nursing Home, L.P.*, 350 F. Supp. 2d 735, 737-38 (S.D. Miss. 2004) ("It appears to the court, however, that with respect to these particular allegations [under 42 C.F.R. § 383.30], plaintiff has not undertaken to allege a claim arising under federal law, but rather has identified defendants' alleged violation of federal regulations as a basis for her state law claims of negligence."). The Court thus finds that plaintiff's citation to 42 C.F.R. § 483.35 is insufficient to establish federal-question jurisdiction.

Second, defendants assert that plaintiff seeks to hold them to a "higher standard" of a ratio of 4.46 hours of patient care that is based on a "disputed" reading of the federal regulation.[23] Defendants contend that because the relevant state regulation provides that "[a]t a minimum, the nursing facility shall provide 2.35 hours of care per patient per day," La. Admin. Code tit. 48, pt. I, § 9823(A), a standard that by plaintiff's own admission is met by defendants, plaintiff's request for an injunction that is based on 4.46 hours

---

23  R. Doc. 12 at 9 & n.10.

of care relies on a higher standard.[24] Defendants further represent that this 4.46 figure is calculated based on a "strained interpretation of the requirements of the federal regulations, not state law."[25] Then, citing *Board of Commissioners of Southwest Louisiana Flood Protection Authority—East v. Tennessee Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017), defendants conclude that because plaintiff seeks relief that is not required under state law, her petition necessarily raises federal issues.[26] *See id.* at 723 (holding that because plaintiff's claims "cannot be resolved without a determination whether multiple federal statutes create a duty of care that does not otherwise exist under state law," plaintiff's claims arise under federal law).

But defendants second argument similarly fails to satisfy their burden to establish federal jurisdiction. The Louisiana regulation at issue requires nursing facilities to provide "sufficient nursing staff to provide nursing and related services that meet the needs of each resident," which "at a minimum" requires the nursing facility to provide 2.35 hours." La. Admin. Code tit. 48, pt. I, § 9823(A). Just because plaintiff concedes that defendants have provided 3.00 nursing hours, which is above the *minimum* requirement

---

[24] *Id.* at 3.
[25] *Id.* at 3.
[26] *Id.* at 7-8.

12

established by the regulation, does not mean that defendants have complied with the regulation. *See Broden v. Riverlands Home Grp., L.L.C.*, No. 22-1573, 2022 WL 2315019, at \*4 (E.D. La. June 28, 2022) ("The fact that Louisiana law specifies a 'minimum' required number of nursing hours does not necessarily signify that all nursing hours above that minimum are 'sufficient.'"); *cf. MacRae v. HCR Manor Care Servs.*, No. 14-715, 2014 WL 12588464, at \*5 (C.D. Cal. Oct. 30, 2014) ("Nothing in the text of the regulations indicates that if a nursing home fulfills the minimum level of 3.2 nursing hours, it necessarily has 'an adequate number' of personnel to carry out the functions of the facility."). If that were the case, the regulation's requirements that facilities have "sufficient nursing staff to provide nursing and related services that meet the needs of each resident" and to "assure that each resident receives treatments, medications, diets and other health services as prescribed and planned, all hours of each day" would be "mere surplusage." *See Mellor v. Par. of Jefferson*, No. 21-858, 2022 WL 884001, at \*2 (La. Mar. 25, 2022) ("[C]ourts are bound, if possible, to give effect to all parts of a law and to construe no sentence, clause or word as meaningless and surplusage . . . ."); *State v. Bell*, 947 So. 2d 774, 778 (La. App. 4 Cir. 2006) ("The statutory and jurisprudential rules for statutory construction and interpretation apply equally well to . . . regulations.").

13

Accordingly, unlike in *Board of Commissioners*, plaintiff is seeking a form of relief that is available under Louisiana law and is based on a duty established by Louisiana regulations. *See Par. v. Atl. Richfield Co.*, No. 16-16294, 2017 WL 2875723, at *4 (E.D. La. July 6, 2017) (concluding that after further briefing following the Fifth Circuit's decision in *Board of Commissioners*, federal-question jurisdiction did not exist in the case because plaintiff's claims "can be determined without referring to any federal standards"). Relatedly, because plaintiff does not rely on federal law for her claim that defendants failed to provide sufficient hours of patient care, defendants' assertion that there is a "serious dispute as to whether the federal regulations at issue create . . . a duty [of 4.46 hours],"[27] also falls flat. Specifically, plaintiff does not purport to rely on a federal regulation in calculating her proposed ratio of 4.46, and instead explicitly identifies the various sources of data she consulted in reaching that ratio, none of which establishes duties under federal regulations.[28] The Court thus finds that there is no dispute here, and that plaintiff's use of CMS data to calculate her proposed nurse-to-resident ratio is insufficient to establish federal-question jurisdiction.

---

[27]   R. Doc. 12 at 9 n.10.
[28]   R. Doc. 1-1 ¶ 15.

14

In sum, the Court finds that plaintiff's right to relief does not necessarily depend on the resolution of a substantial question of federal law. Defendants have not met their burden of establishing that each of the four *Grable* prongs justifies removal, given that no federal right is an essential element of plaintiff's claims, and thus no federal law must be interpreted, let alone a federal law that presents a substantial and disputed issue. And defendants' assertion that the federal government has a compelling interest in the resolution of this case given its "longstanding presence . . . in the realm of nursing home staffing and reimbursement," is belied by the merely tangential relationship of this case to a federal regulation for which Congress did not create a private cause of action. *See Singh*, 538 F.3d at 339 (noting that the Supreme Court in *Merrell Dow* "reasoned that because Congress had established no private remedy for violations of the statute, it had no substantial interest in seeing the statute applied in state tort cases"). The Court thus finds this case does not fit within the "slim category" of cases that satisfy the *Grable* paradigm, and therefore the Court lacks jurisdiction over plaintiff's claims under 42 U.S.C. § 1331. *Empire Healthchoice*, 547 U.S. at 701.

### B.   *Qui Tam* Action

Defendants alternatively argue that plaintiff's damages request based on "the amount of money paid"[29] to defendants is a "vague *qui tam*" claim that is grounded in relief that is available only under federal law.[30] Defendants specifically assert that plaintiff is bringing a *qui tam* claim based on the following language in plaintiff's petition: "[a]s a result of the [defendants'] knowing, intentional/fraudulent misrepresentations, justifiable relied upon [by] residents, . . . the [facility] deprived residents, including Mr. Picou, and others similarly situated, of 33% of the nursing services promised such that the resulting damages total 33% of the amount of money paid to the [facility] in the class period for resident care."[31] Defendants conclude that because there is "no authority for recoupment damages under Louisiana law," plaintiff is seeking a federal-law remedy that is sufficient to establish federal-question jurisdiction.[32]

The Court rejects defendants' *qui tam* argument for two reasons. First, the *qui tam* provisions of the False Claims Act "allow[] a private citizen with special knowledge of fraud against the government to commence suit in the

---

[29]   *Id.* ¶ 13.
[30]   R. Doc. 12 at 12-13.
[31]   R. Doc. 1-1 ¶ 13.
[32]   R. Doc. 12 at 12.

16

name of the government." *United States v. U.S. ex rel. Thornton*, 207 F.3d 769, 771 (5th Cir. 2000). Here, there is nothing in Cole's petition to suggest that she is bringing her allegations on behalf of the government. Second, plaintiff's cause of action for fraudulent misrepresentations is brought in tort under Louisiana Civil Code art. 2315, which permits her to "recover . . . actual pecuniary losses . . . [and] non-pecuniary losses." *Haggerty v. March*, 480 So. 2d 1064, 1068 (La. App. 5 Cir. 1985). Accordingly, plaintiff's request that class members receive damages based on their alleged pecuniary losses is an available form of recovery under Louisiana law, and does not invoke a federal cause of action.

### C.  Request for Attorneys' Fees

In addition to moving to remand her case, plaintiff also requests attorneys' fees and costs.[33] Under 28 U.S.C. § 1447(c), a federal court that orders remand of an action to state court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "There is no automatic entitlement to an award of attorney's fees" if the Court determines that the removal was legally improper; instead, the

---

[33]  R. Doc. 6-1 at 13-14.

decision to award attorneys' fees is left to the discretion of the trial court. *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000).

In order to determine whether an award of attorneys' fees is appropriate, the Court considers "whether the defendant had objectively reasonably grounds to believe the removal was legally proper." *Id.* at 293. Here, plaintiff asserts that because caselaw "overwhelmingly demonstrates there is no federal cause of action for violations of these Medicare/Medicaid regulations," and because plaintiff's petition does not raise a substantial federal issue under *Grable*, there was "no objective support" for removal.[34] Defendants had an arguable basis to remove this case under *Grable*, based on the authorities cited in their opposition to plaintiff's motion to remand. While defendants' grounds for removal were without merit, defendants had objectively reasonable grounds to believe that removal was proper. *Cf. id.* at 293 (declining to award attorneys' fees to non-removing party even though removal was legally improper, because removing party "could conclude from th[e] case law that its position was not an unreasonable one").

---

[34] *Id.* at 14.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's motion to remand. This case is REMANDED to the Twenty-Fourth Judicial District Court for the Parish of Jefferson. The Court further DENIES plaintiff's request for attorneys' fees and costs.

New Orleans, Louisiana, this __12th__ day of July, 2022.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE